SERVICE COPY

ELECTRONICALLY FILED
Baxter County Circuit Court
Canda Reese, Circuit/County Clerk
2018-May-25 15:57:05
03CV-18-265
C14D04 : 13 Pages

IN THE CIRCUIT COURT OF BAXTER COUNTY, ARKANSAS
CIVIL DIVISION

MISTY PAYNE,
Individually, and as
Next friend of Z.P.,                                    PLAINTIFFS

v.            No. _____

NORFOLK SCHOOL DISTRICT,
XYZ INSURANCE COMPANY                                   DEFENDANTS

RECEIVED
MAY 29 2018
12:04 PM
_____ SHERIFF
_____ DEPUTY SHERIFF

## COMPLAINT

COMES NOW Misty Payne, as mother and next friend of Z.P., a 5-year-old child, who brings this action for injunctive relief and legal damages under the Americans with Disabilities Act, the Arkansas Civil Rights Act, The Fourth and Eighth Amendments, and all applicable state education laws, and states as follows:

### JURISDICTION AND VENUE

1. This is an action for injunctive and declaratory relief and legal damages arising from the following laws:

    i. Americans with Disabilities Act, Title II;

    ii. Arkansas Civil Rights Act (Ark. Code. Ann. § 16-103-7);

    iii. The Fourth and Eighth Amendments' prohibitions on unlawful searches and seizures; and,

    iv. Arkansas education laws and regulations.

2. Venue is appropriate in this judicial district under A.C.A. § 16-60-190 because the events that gave rise to this Complaint occurred in this District, and Norfork School District is headquartered in Baxter County, Arkansas

### FACTS

1. Z.P. is a five-year-old boy who is enrolled in kindergarten at Arrie Goforth Elementary School in the Norfork School District. His mother is Mrs. Misty Payne.

2. Despite his passing grades, and steady, appropriate growth in his academic development, Z.P. and his mother have been notified by Elementary Principal Diana Klause, Kindergarten

Attachment A

Teacher Sandra Farris, and Interventionist Kelly Shaddie that he was retained in kindergarten, and he was not allowed to participate in graduation on Tuesday, May 15, 2018. (Exhibit A)

3. Z.P. was denied participation in graduation preparation activities. He was segregated to another room and required to do worksheets while his peers enjoyed pre-graduation activities.

4. The reasons for retention given verbally to Mrs. Payne do not withstand scrutiny or a basic reasonable standard, and they contradict the marks on his report cards. (Exhibit B)

5. Principal Klause, Teacher Farris, and Interventionist Shaddie called a meeting with short notice and told Mrs. Payne that Z.P. was too immature to proceed to first grade. This is not a qualifying reason to retain a child by law, nor is it supported by expert educators, nor is it currently accepted professional practice.

6. In 2013 and 2015, the Arkansas legislature enacted new laws requiring that all K-3 students receive routine screenings for dyslexia, and be provided appropriate intervention as indicated. Under the legal standards, a formal diagnosis is not required. The child only need show "characteristics of dyslexia" to qualify for intervention. A.C.A. § 6-41-603.

7. Further, Norfork School District is required to identify and serve children such as Z.P. under federal Child Find responsibilities. 20 U.S.C. 1412(a)(3); 34 CFR 300.111(d).

8. In the state of Arkansas, basic literacy is a major social challenge. Throughout the state, only 42% of third graders are reading at "ready or exceeding" grade-level expectations.[1] In the Norfork School District, 59% of third graders are "ready or exceeding" grade-level expectations.[2]

9. In alignment with a major statewide literacy initiative called "RISE Arkansas," the Norfork School District purchased a "science of reading" curriculum called "Phonics First." The effectiveness of this program requires that it be "implemented with fidelity" by teachers and interventionists, with on-going monitoring and reporting by the vendor to building administrators. It is the expectation of the District that its teachers will implement this program.

10. Upon information and belief, the Norfork School District's contract with the vendor of the proprietary Phonics First program includes for the provision of education materials, professional development / teacher training, intervention materials, and on-going monitoring and reporting of the implementation of the program in each classroom.

11. Based on Z.P.'s schoolwork, the Phonics First curriculum was not consistently implemented with fidelity as required for any part of the school year. Instead of properly

---

[1] ADE Data Center – School Report Cards – Accessed at: https://myschoolinfo.arkansas.gov/Schools/Detail/0304021
[2] Id.
[3] Code of Ethics for Arkansas Educators. Stand... visions/educator%20effectiveness/plsb-

Complaint
Page 2 of 13

implementing Phonics First with fidelity, Kindergarten Teacher Sandra Farris is utilizing old, outdated teaching materials for worksheets. For examples, there are no examples of teaching phonemic awareness or providing multi-sensory lessons. There is no evidence of phonetics coursework from August 2017 until February 2018. The Phonics First worksheets are inconsistently numbered, dated, and either completed or untouched.

12. Teacher Farris is utilizing worksheets from the years 2006, 2004, 1995, and older, but this teacher is not that old. That means that she is affirmatively choosing to go into older, outdated sources, rather than teach the new, district-required curriculum. Upon information and belief, in February 2018, of the 16 students in this teacher's classroom, 11 were not meeting reading expectations, and NSD pulled all their interventionists to work with the children in this classroom. Therefore the school's leadership and administration are aware of and deliberately indifferent to this issue, and choosing to support and cover for the teacher, instead of holding her properly accountable for doing her job according to the contractual expectations of the Norfork School District.

13. Upon information and belief, the Phonics First company's contract requires that they monitor and report on the District's implementation of their proprietary program by each teacher. Therefore, NSD administrative leadership has actual or constructive knowledge of the failures of implementation in this kindergarten classroom.

14. Z.P's math skills are good, and he struggles with phonemic awareness. This disparity is a first sign of dyslexia. Also, in his writing as a kindergartener, Z.P. reverses his b's and d's. This can be another sign of dyslexia, but it is usually not considered such until first grade because it could also be a normal developmental habit or phase. In Z.P.'s schoolwork, Teacher Farris marked reverse letters as wrong on his grades, which is not appropriate at the kindergarten level. He is not reading accurately or fluently.

15. There are no indications that dyslexia-specific intervention was done with Z.P. No such interventions were reported to his mother, nor were progress-monitoring notes provided. Z.P. qualifies under the dyslexia law to receive intervention.

16. According to the school's own "iStation" data, Z.P. was identified in August, at the beginning of the school year as a "tier 3 person." Therefore he should have been provided intervention since the beginning of the year.

17. Upon finally receiving intervention in Spring 2018, Z.P. immediately showed substantial improvement and positive response to intervention. However, when it was finally provided, the "Response to Intervention," ("RTI") was not done in compliance with applicable laws and regulations. For example, Mrs. Payne was not notified of intervention activities and progress monitoring. No RTI "progress monitoring" records were provided to Mrs. Payne, or apparently

properly included in Z.P.'s student records. These records are essential to making informed decisions about a student's needs and future expectations.

18. In this case, because he responded positively to the interventions such as they were provided, and his skills met expectations by year-end, Z.P. would likely not qualify for special education services at this time. This situation would be called 'no substantial impairment,' in part because the reason given for Z.P.'s retention was behavior and not academic issues.

19. Kindergarten Teacher Sandra Farris complains that Z.P. is immature, and/or has a behavior-related disability.

20. She collected behavior data throughout the year, but never tried to do anything with the data or have a conference. She never drafted or implemented a behavior plan. She only used the behavior data for disciplinary purposes and to attempt to justify an unlawful retention of an academically capable child.

21. Z.P. did not get to attend the Halloween party for his class, with no notice.

22. Teacher Farris requires Z.P. to sit apart from his class, and she excludes him from regular classroom activities. She disciplines him continuously for petty and age-appropriate behaviors.

23. Throughout kindergarten, Z.P. has received innumerable, continuous punishments and admonishments, including receiving corporal punishment more than once.

24. Z.P. was punished without guidelines or policies in place or being followed in regards to his classroom behavior and punitive measures, insofar as no behavior improvement plan was drafted or followed.

25. It is known that both children and adults with un-identified and un-treated dyslexia may act out in frustration or become depressed and withdrawn. In these cases, these mental health symptoms are often indicators of an underlying unaddressed learning disability.

26. Federal and state laws and rules have been developed to direct and guide school districts as how to serve children with dyslexia and dyslexia-type learning differences. Schools must properly evaluate students, then provide appropriate research-based interventions with fidelity, and provide a free and appropriate education in the least restrictive environment, free from discrimination, segregation, and retaliation.

27. When Mrs. Payne inquired and advocated for her son, she experienced denials, pushback, unprofessional attitudes, and ultimately retention of her son, by the Principal and Interventionist Shaddie, who chose to support and enforce wrongful conduct by Teacher Farris instead of correcting the situation. Therefore, she has experienced discrimination, segregation, and retaliation in her own right.

28. Teacher Farris has a bad attitude towards this child. Her attitude escalated after his mother raised concerns that appropriate reading interventions were still not occurring, and she expressed concern for what is being said to her child about being refused from participation in graduation, despite his passing grades.

29. Because of concern for insults, neglect, alienation, and marginalization in the classroom, Mrs. Payne has recently sent her son to school every day outfitted with a recording device. These recordings support the concerns raised and allegations made herein. On Wednesday, May 2, 2018, school staff removed the recording device and turned it off or deleted the content from the start of day until approximately 2:30p.m. This removal constituted an illegal search and seizure. Further, this removal was spoliation of data records, knowing that litigation was possible due to their own bad acts during the school year, which escalated as spring 2018 progressed.

30. Kindergarten Graduation was scheduled for Tuesday, May 15, 2018, at 9:00 a.m.

31. Z.P. was prohibited by Principal Klause from participation in the ceremony.

32. Mrs. Payne was notified that Z.P. would be retained for kindergarten verbally in a meeting noticed through same-day text messages, and an end-of-year note sent home in Z.P.'s lunchbox.

33. Without injunctive relief, Z.P. will be forced to repeat Kindergarten in the 2018-19 school year. Injunctive relief is proper because Plaintiffs have strong claims and a great likelihood of success on the merits, because, Z.P. completed and passed all of the work required to transition to first grade.

34. There is no substantive evidence to support a decision of retention in this matter. To do so would be to discriminate, retaliate, and segregate this child on the basis of an unsubstantiated, biased perception that he has a behavior-related disability.

35. Otherwise, the Norfork School District's official acts indicate that they consider early boyhood and/or possible dyslexia to be disabilities, and that they are willing to act in discriminatory, segregationist, and retaliatory ways against such children with these characteristics and their families who advocate for them.

36. Upon information and belief, retentions are a problem in this school district. such that in a recent class of first graders, eight of 32, or 25%, were retained to repeat first grade.

37. It is adverse to the interests of justice in Arkansas to allow this wrongful conduct to continue.

38. This child is being discriminated, segregated, and retaliated against because school officials perceive him to have a disability, i.e. a significant and substantial enough behavior and

maturity problem that he must be retained in Kindergarten. But concurrently they do not afford him the legal protections of a disabled person under the laws that exist for those purposes. He therefore sues for injunctive relief and legal damages.

## APPLICABLE LAWS

### Americans with Disabilities Act, Title II

39. Title II of the ADA provides that 'No qualified individual with a disability shall, by reason of such a disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Title II further prohibits the unnecessary segregation of persons with disabilities. [GA, Olmstead.]

40. The chief purpose of the ADA is to end discrimination against, and the isolation of, individuals with disabilities. As Congress stated in the findings and purpose sections of the ADA: "[H]istorically, society has tended to isolate and segregate individuals with disabilities, and despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem." 42 U.S.C. § 12101(a)(2). Congress further found that discrimination against individuals faced various forms of discrimination, including "segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." 42 U.S.C. § 12101(a)(3), (a)(5).

41. Title II of the ADA therefore prohibits discrimination on the basis of disability by public entities. *See* 42 U.S.C. § 12132. A "public entity" is any state or local government and any department, agency, or other instrumentality of a state or local government, and covers all services, programs, and activities provided or made available by public entities, including through contractual, licensing, or other arrangements. 42 U.S.C. § 12131. Accordingly, Title II's coverage extends to the state and its agencies.

42. Congress directed the Attorney General to issue regulations implementing Title II of the ADA. *See* 42 U.S.C. § 12134.

43. Title II regulations require public entities to "administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. § 35.130(d). "The most integrated setting" means a setting that "enables individuals with disabilities to interact with nondisabled persons to the fullest extent possible..." *See id.* pt 35, app. B at 690.

44. Title II's regulations further prohibit public entities from utilizing "criteria or methods of administration" that have the effect of subjecting qualified individuals with disabilities to discrimination, including unnecessary segregation, or "that have the purpose or effect of

defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities... *Id.* § 35.130(b)(3).

45.   The Supreme Court has held that Title II prohibits the unjustified segregation of individuals with disabilities in the provision of public services. [Olmstead] 527, U.S. at 597. Unjustified isolation of persons with disabilities who, with reasonable modifications, could participate in an integrated setting is unlawful discrimination because (1) segregation "perpetuates unwarranted assumptions that persons so isolated are incapable or unworthy of participating in community life," and (2) segregation "severely diminishes the everyday life activities of individuals, including family relations, social contracts, work options, economic independence, educational advancement, and cultural enrichment." Id. at 600-01.

46.   Title II's regulations also address discrimination in the form of inequality in services, programs, or activities provided by public entities. Public entities may not (1) "[d]eny a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit from an aid, benefit, or service;" (2) "[a]fford a qualified individual with a disability an opportunity to participate in or benefit from an aid, benefit, or service that is not equal to that afforded others;" (3) "[p[roved a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others;" or (4) "[o]therwise limit a qualified individual with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit, or service." *Id.* Sec 35.130(b)(1)(i)-(iii), (vii).

## CLAIM I
## Americans with Disabilities Act, Title II;
## **DEPRIVATION OF EQUAL EDUCATIONAL ACCESS / DISCRIMINATION**

47. Plaintiff incorporates the foregoing as though fully set forth herein.

48. Defendant is a public organization for supervising the operations of a public entity subject Title II of the A.D.A. 42 U.S.C. section 12131 - 1.

49. The requirements regarding the provisions of a Free and Appropriate Public Education as specifically described in Section 504 regulations are incorporated in the general non-discrimination provisions of the applicable A.D.A. regulation. 28 CFR section 35.138.

50. Z.P. is a qualified individual with disabilities within the meaning of Title II of the A.D.A., and he meets essential eligibility requirements for the receipt of services, programs, and activities of Defendant. 42 U.S.C. section 12131 - 1.

51. The retention of Z.P. as indicated in Exhibit B is a *prima facie* denial of a Free and Appropriate Public Education.

52. Further, as set forth above, Defendants violated Title II of the A.D.A. and discriminated against Plaintiffs, by allowing Z.P. to be discriminated against by their staff, in the provision of education programming, and participating in full activities, while in their care, after exhibiting behaviors which are symptoms and characteristics of his disability, or perceived disability, when they retained him without sufficient reason, and alleged that that he had behavior-related issues significant enough to retain him, but failed to implement a behavior improvement plan, and provided him with unequal educational opportunities, and took punitive, exclusionary actions against the child for the natural results of the failures of the educators to implement the proper curriculum.

53. As set forth above, Defendant's policies and practices regarding students with perceived or actual learning disabilities constitute persistent failure to meet the requirements of Title II of the A.D.A., and discriminate against Plaintiff, solely by reason of his disability, in violation of the requirements of A.D.A., by denying him equally effective educational opportunities in the most integrated appropriate setting, and instead providing him with a separate, different, and inferior educational experience.

54. Thus, defendants have discriminated against Z.P., deprived Z.P. of a free and appropriate education, and segregated him from his peers and community, in violation of the A.D.A.

55. As a direct and proximate result of Defendants' violations, Plaintiffs have suffered irreparable harm, including personal reputation and equal educational opportunities.

56. Wherefore, under Title II of the A.D.A. and its implementing regulations, compensatory and injunctive relief are appropriate remedies.

57. Wherefore, Plaintiffs pray for Relief as set forth below.

## CLAIM II
### Americans with Disabilities Act, Title II;
### SEGREGATION

58. Plaintiff incorporates the foregoing as though fully set forth herein.

59. As set forth above, Defendant's policies and practices regarding students with perceived or actual learning disabilities constitute persistent failure to meet the requirements of Title II of the A.D.A., and discriminate against Plaintiff, solely by reason of his disability, in violation of the requirements of A.D.A., by causing him to be segregated from his peers and community, and subjected to discriminatory conditions of segregation for

exhibiting behaviors which are symptoms and characteristics of his disability, without fulfilling their contractual duties to provide research-based interventions and therapies, as required by law.

60. Thus, defendants have discriminated against Z.P., deprived Z.P. of a FAPE and segregated him from his peers and community, in violation of the A.D.A.

61. As a direct and proximate result of Defendants' violations, Plaintiffs have suffered or may suffer, irreparable harm, including personal reputation and equal educational opportunities.

62. Wherefore, under Title II of the A.D.A. and its implementing regulations, compensatory and injunctive relief are appropriate remedies.

63. Wherefore, Plaintiffs pray for Relief as set forth below.

## CLAIM III
## Americans with Disabilities Act, Title II;
## RETALIATION

64. Plaintiff incorporates the foregoing as though fully set forth herein.

65. As set forth above, Defendant's employees retaliated against Plaintiffs Z.P. and Misty Payne when, in response to Mrs. Payne's repeated requests for appropriate interventions and adult accountability, instead of providing same, instead intensified hostile, exclusionary, and punitive attitudes towards Plaintiffs.

66. As a direct and proximate result of Defendants' violations, Plaintiffs have suffered or may suffer, irreparable harm, including personal reputation and equal educational opportunities.

67. Wherefore, under Title II of the A.D.A. and its implementing regulations, compensatory and injunctive relief are appropriate remedies.

68. Wherefore, Plaintiffs pray for Relief as set forth below.

## CLAIM IV
## Arkansas Civil Rights Act (Ark. Code. Ann. § 16-103-7)

69. Plaintiff incorporates the foregoing as though fully set forth herein.

70. Defendants treat the minor Plaintiff as though young boyhood and / or potential dyslexia as disabilities, and they discriminate him, segregate him, and retaliate against him and his mother, because they perceive him to be disabled.

71. Under Arkansas law, Plaintiff has a right to be provided a public education free from discrimination, segregation, and retaliation.

72. Wherefore, under Arkansas Civil Rights Act and its implementing regulations, compensatory and injunctive relief are appropriate remedies.

73. Wherefore, Plaintiffs pray for Relief as set forth below.

## CLAIM IV
### Fourth and Eighth Amendments - Unlawful Search and Seizure

74. Plaintiff incorporates the foregoing as though fully set forth herein.

75. Defendants without due process removed a recording device from minor Plaintiff Z.P.'s person, and destroyed or tampered with its contents.

76. Wherefore, under the Fourth and Eighth Amendments and their implementing regulations, compensatory relief is an appropriate remedy.

77. Wherefore, Plaintiffs pray for Relief as set forth below.

## CLAIM V – For Injunctive & Declaratory Relief
### Violations of State Laws and Regulations – Reading, Dyslexia & Educator Ethics

78. Plaintiff incorporates the foregoing as though fully set forth herein.

79. Under Arkansas regulations, Plaintiff has a right to be provided a public education by a classroom teacher who is competent in their professional practice.[3]

80. Under Arkansas law, Plaintiff Z.P. has a right to be provided a public education, which is to include routine dyslexia screenings and interventions, without the need to invoke IDEA or Section 504. A.C.A. § 6-41-601.

81. Further, when Plaintiff Z.P. exhibited a substantial deficiency in reading ability, he had the right to intensive reading instruction based on "science of reading" curricula, which was to be continuously provided until the reading deficiency was corrected. A.C.A. § 6-15-2004 (a)(2)(A).

---

[3] Code of Ethics for Arkansas Educators, Standard 2. http://www.arkansased.gov/divisions/educator%20effectiveness/plsb-professional-ethics-discipline/code-of-ethics-for-arkansas-educators

82. Under Arkansas law, when her son's dyslexia screenings indicated a need for intervention services, Plaintiff Misty Payne had a right to be notified of Z.P's dyslexia screening results, and should have been provided with information and resource materials, including information about the characteristics of dyslexia, interventions and accommodations, and how to procure further professional dyslexia-related evaluations. A.C.A. § 6-41-604 (a).

83. According to the Code of Ethics for Arkansas Educators, as promulgated by the Arkansas Department of Education, Standard 1, Plaintiff Z.P. has a right to be provided a public education to include qualified, professional educators and administrators who do not belittle, ignore, marginalize, pick at, diminish, or otherwise harass, intimidate, or bully students, especially those who struggle as a direct result of the same educators' and administrators' own professional failures. ("An educator maintains a professional relationship with each student, both in and outside the classroom."[4])

84. Defendants have failed to implement education laws and regulations as required.

85. The Building Leader, Principal Principal Deanna Klause is a final policy and decision maker for the Norfork School District, and therefore the District's policies, pattern, and practice are established by this conduct. Principal Klause acted specifically when she endorsed and effectuated the threatened retention of Z.P. and his exclusion from the graduation preparation activities. Further, she either knew or did not know of the teacher's failure to properly implement the science of reading curriculum program, because she should have been receiving regular reports from the provider as to the fidelity of the program implementation. She either did or did not know of school's non-compliance with dyslexia laws, but she can be imputed with constructive and likely actual knowledge of the issues complained herein, based on the numbers of students not succeeding, the need to remediate over half the class mid-year with attendant interventionist schedule changes, Plaintiff Misty Payne's communications regarding this matter, and Plaintiff Z.P.'s educational record showing strong positive responses to dyslexia-appropriate interventions, once they finally began in earnest this Spring.

86. This is a claim for injunctive, declaratory, and legal relief under the laws cited. If necessary, Plaintiffs will file for educational relief related matters (such as educational evaluations) through the IDEA's administrative due process system.

87. As even considering his exhibiting characteristics of dyslexia, Z.P. satisfactorily completed his kindergarten coursework and there is no sound legal rationale for the NSD

---

[4] Code of Ethics for Arkansas Educators, Standard 1: http://www.arkansased.gov/divisions/educator%20effectiveness/plsb-professional-ethics-discipline/code-of-ethics-for-arkansas-educators

to retain him. Therefore equitable relief is appropriate in the form of an injunction prohibiting NSD from retaining Plaintiff Z.P. in kindergarten for another year.

88. Finally, the Court should issue a declaratory order that the Norfork School District is bound by state laws and regulations regarding science of reading, dyslexia interventions, and ethical standards for educators, and that its administrators shall operate the District in compliance therewith.

## RELIEF REQUESTED

89. Plaintiffs seek the following relief;

    a. That an Injunction immediately issue, ordering the Norfork School District to release Z.P. from kindergarten, and promote him to first grade;

    b. For legal damages to be determined, for discrimination, segregation, and retaliation already experienced by Z.P. and his mother over the course of this school year;

    c. For legal damages to be determined, to remediate the denial of required educational programming experienced by Z.P. over the course of this school year;

    d. For attorney's fees and costs in bringing this action;

    e. And all other relief the Court deems just and proper.

**WHEREFORE**, Plaintiff prays this Court will issue an injunction, ordering the Norfork School District to release Z.P. from kindergarten, and promote him to first grade; awarding legal damages to be determined, for discrimination, segregation, and retaliation already experienced by Z.P. and his mother over the course of this school year; awarding legal damages to be determined, to remediate the denial of required educational programming experienced by Z.P. over the course of this school year; awarding attorney's fees and costs in bringing this action; And all other relief this Honorable Court deems just and proper.

Dated: May 25, 2018

Respectfully submitted,

*Amelia Lafont* (signature)

Amelia Lafont
AR Bar No. 2015223
Law Office of A. Lafont, PLLC

PO Box 56102, Little Rock, AR 72215
501.237.0345 phone / 501.325.6717 fax
attorneylafont@gmail.com


*/s/ Camille M. Cashion*
Camille M. Cashion
AR Bar No. 2017143
The Cashion Law Firm, PLLC
201 W. Markham St., Ste. P70,
Little Rock, AR 72201
501.350.9501 phone / 501.421.0130 fax
camille@cashionlaw.com

IN THE CIRCUIT COURT OF BAXTER COUNTY, ARKANSAS
14TH CIRCUIT DIVISION 4

<u>MISTY PAYNE ETAL V NORFORK SCHOOL DISTRICT</u>

03CV-18-265

**SUMMONS**

**THE STATE OF ARKANSAS TO DEFENDANT:**

NORFORK SCHOOL DISTRICT
136 Mildred Simpson Dr
Norfork, AR  72658

A lawsuit has been filed against you. The relief demanded is stated in the attached complaint. Within 30 days after service of this summons on you (not counting the day you received it) - or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas - you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:

Amelia Lafont
PO Box 56102
Little Rock, AR  72215

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

Additional notices:

CLERK OF COURT

Address of Clerks Office

CANDA REESE, CIRCUIT CLERK
CIRCUIT COURT OF BAXTER COUNTY
ONE EAST 7TH STREET
MOUNTAIN HOME, AR  72653

Canda Reese
K. Smith

Kayla Smith, DC

Date: 05/29/2018

No. 03CV-18-265 This summons is for   NORFORK SCHOOL DISTRICT (name of Defendant).

PROOF OF SERVICE

☐ I personally delivered the summons and complaint to the individual at
_____[place] on _____ [date];
or

☐ I left the summons and complaint in the proximity of the individual by
_____ after he/she refused to receive it when I offered it to him/her; or

☐ I left the summons and complaint at the individual's dwelling house or usual place of abode at
_____[address] with _____[name], a person at least 14 years of age who resides there, on _____[date]; or

☐ I delivered the summons and complaint to _____[name of individual], an agent authorized by appointment or by law to receive service of summons on behalf of
_____[name of defendant] on _____[date]; or

☐ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I served the summons and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as shown by the attached signed return receipt.

☐ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the summons and complaint by first-class mail to the defendant together with two copies of a notice and acknowledgment and received the attached notice and acknowledgment form within twenty days after the date of mailing.

☐ Other [specify]:
_____

☐ I was unable to execute service because:
_____
_____

My fee is $ ____.

**To be completed if service is by a sheriff or deputy sheriff:**

Date: _____        SHERIFF OF _____ COUNTY, ARKANSAS

                              By: _____
                              [Signature of server]

_____
[Printed name, title, and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: _____   By: _____
[Signature of server]

_____
[Printed name]

Address: _____
_____

Phone: _____

Subscribed and sworn to before me this date: _____

_____
Notary Public

My commission expires: _____

Additional information regarding service or attempted service:
_____
_____

ELECTRONICALLY FILED
Baxter County Circuit Court
Canda Reese, Circuit/County Clerk
2018-May-25 15:57:05
03CV-18-265
C14D04 : 1 Page



**Arrie Goforth Elementary**
**Home of the Panthers**
Deanna Klaus, Principal
Keela Olson, Counselor
161 Mildred Simpson Drive Norfork, AR 72658
Phone: (870)499-7192   Fax: (870)499-7198

Dear Mr. and Mrs. Payne,

As we have previously discussed, Zachary will be retained to kindergarten for the 2018-19 school year. We believe this will give him more time to acquire the skills he needs to be successful in the first grade. Tuesday will be the kindergarten graduation and the last day for students participating in that ceremony. Since Zachary will not be participating in the graduation ceremonies until next year, Monday, May 14, 2018 will be his last day of school for the 2017-18 school year. Please let us know if you have any questions and have a wonderful summer.

Sincerely,

Deanna Klaus
Sandra Farris

*Deanna Klaus*
*Sandra Farris*

EX A

ELECTRONICALLY FILED
Baxter County Circuit Court
Canda Reese, Circuit/County Clerk
2018-May-25 15:57:05
03CV-18-265
C14D04 : 2 Pages



EX B

| Conduct | 1 | 2 | 3 | 4 |
|---|---|---|---|---|
| Works cooperatively and respects others | N | S- | S- | N |
| Follows teacher directions, rules and established routines | N | S- | S- | N |
| Controls talking and voice level | N | S- | S- | N |
| Stays on task and completes assignments | N | S- | S- | N |

E - Excellent Behavior   N - Behavior Needs Improvement
S - Satisfactory Behavior   U - Unsatisfactory Behavior

### First Nine Weeks Grading Period

✓ Parent(s) attended conference.

____ Parent(s) did not attend conference.

____ Contacted by phone. Mother  Father  Guardian  Date:_____

_[signature]_    _[signature]_
Parent's Signature    Teacher's Signature

### Second Nine Weeks Grading Period

Comments: _____

Promotion in Danger: (Yes)  No

_[signature]_
Parent's Signature    Teacher's Signature

### Third Nine Weeks Grading Period

____ Parent(s) attended conference.

____ Parent(s) did not attend conference.

✓ Contacted by phone: (Mother)  Father  Guardian  Date: 3-15-18

_[signature: Sandra Farris]_
Parent's Signature    Teacher's Signature

### Fourth Nine Weeks Grading Period

Comments: Your child, Zacbree Payne, will be retained in Kindergarten next year.

_[signature: Sandra Farris]_
Parent's Signature    Teacher's Signature

EX B

## Julie Tilley

| | |
|---|---|
| **From:** | Amy Lafont <attorneylafont@gmail.com> |
| **Sent:** | Tuesday, May 29, 2018 11:37 AM |
| **To:** | jtilley@baxtercountysheriff.com |
| **Cc:** | Camille Cashion |
| **Subject:** | Request for service of process - civil lawsuit - Payne v. NSD |
| **Attachments:** | PAYNE v Norfork SD - SUMMONS.pdf; Payne v NSD - COMPLAINT - stamped.pdf; Payne Ex B stamped.pdf; Payne EX A stamped.pdf |

Dear Ms. Tilley,

I am writing to follow up on our conversation last week, and to effect service of process for the lawsuit I filed Friday in Baxter County Civil Court. (Payne v. Norfork School District).

Please find attached the summons, the related complaint, and two exhibits. The exhibits are saved as PDFs in color, but please feel free to print them in black and white or greyscale for service copies. Whatever is most convenient for you!

Someone will be bringing a payment of $50 to your office within the next few hours. I spoke with Ms. Kristen who said the receipt copy would be forwarded to you for this file.

Once service is complete, would you please send me a copy by fax before you mail it? The number and address are below.

Please let me know if I need to do anything further! Thank you for processing this request.

Gratefully,
Amy

--

## Law Office of A. Lafont, PLLC

P.O. Box 56102, Little Rock, AR 72215
501.237.0345 phone   501.325.6717 fax
attorneylafont@gmail.com

***** Email confidentiality notice *****
This email and accompanying files are confidential, are intended, and belong solely to whom they are addressed or named. No one else may disseminate, distribute or copy this e-mail. Please notify the sender immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. If you are not the intended recipient you are notified that disclosing, copying, distributing or taking any action in reliance on the contents of this information is strictly prohibited.

1