**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**HARRISON DIVISION**

**MISTY PAYNE, Individually and as Next Friend of Z.P.** — **PLAINTIFF**

**V.** — **CASE NO. 3:18-CV-3072**

**NORFORK SCHOOL DISTRICT** — **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

Currently before the Court are Defendant Norfork School District's ("the District") Motion for Judgment on the Pleadings (Doc. 36) and Memorandum of Law in Support (Doc. 37). Plaintiff Misty Payne never filed any response to the District's Motion. For the reasons given below, the District's Motion is **GRANTED**.

## I. BACKGROUND

Ms. Payne's son, Z.P., was a kindergarten student at Arrie Goforth Elementary School during the 2017–18 school year. Ms. Payne alleges that throughout his kindergarten year, Z.P. exhibited signs and symptoms of dyslexia, but that the District initially did not perform any dyslexia-specific interventions with him. Instead, according to Ms. Payne's Amended Complaint, Z.P. was frequently segregated from his classmates and punished for petty and age-appropriate behavior. Ms. Payne claims that when she attempted to advocate for her child, the District responded with denials, hostility, and unwarranted disciplinary actions against Z.P., causing her such great stress that her "blood pressure escalated to stroke conditions in May 2018," requiring her to take blood pressure medications "which she will now have to take for some time." *See* Doc. 22, ¶ 35.

Eventually, in the spring of 2018, the District performed interventions with Z.P. Ms. Payne contends that these interventions were deficient in important ways, but that despite these shortcomings, Z.P. responded favorably and experienced significant academic improvement, such that by the end of the year his academic performance warranted promotion to first grade along with his classmates. Nevertheless, Ms. Payne alleges, the District told her in May 2018 that Z.P. would be retained because he was too immature to proceed to first grade—which Ms. Payne contends is not a proper reason for retaining a student.

Near the end of that same month, Ms. Payne filed this lawsuit against the District in the Circuit Court of Baxter County, Arkansas, seeking an injunction ordering the District to release Z.P. from kindergarten and promote him to first grade, along with monetary damages, her attorney's fees, and costs. The District removed the lawsuit to this Court a month later. Ms. Payne's Amended Complaint brings seven separate counts against the District.[1] Three are brought under the Americans with Disabilities Act ("ADA") for discrimination, segregation, and retaliation, respectively. Her fourth claim alleges violations of Section 504[2] of the Rehabilitation Act. A fifth brings analogous claims under the Arkansas Civil Rights Act ("ACRA"). A sixth—which has since been dismissed pursuant to oral motion by Ms. Payne's attorney, *see* Doc. 44, p. 1—claimed a violation of the Fourth Amendment to the United States Constitution. Finally, Ms. Payne's seventh

[1] The Amended Complaint also names several other defendants, but all claims against them were dismissed because Ms. Payne never served them with process. *See* Docs. 51, 53.

[2] Actually, the Amended Complaint refers to "Section 505" of the Rehabilitation Act. But the Court presumes this is a scrivener's error, as Section 504 prohibits discrimination while Section 505 pertains to remedies. *Compare* 29 U.S.C. § 794 *with id.* at § 794a.

claim cites a wide variety of Arkansas statutes and regulations in support of a general claim for declaratory and injunctive relief.

On December 4, 2018, the District filed a Motion for Judgment on the Pleadings. Ms. Payne's deadline to respond to that Motion was extended to December 27, 2018, but no response was ever filed. Instead, the following month Ms. Payne informed the Court that her attorney was dealing with serious medical issues, and she requested a stay of proceedings in this case until those issues could be resolved. *See* Doc. 45. This Court entered a stay of 90 days. *See* Doc. 46. After another request from Ms. Payne, *see* Doc. 47, the Court extended the stay for an additional 60 days, but cautioned that it was "very unlikely the Court will grant any further extensions of this stay, absent extraordinarily good cause"—with the additional warning that "an attorney's ongoing inability to devote adequate time, attention, or resources to this matter is very unlikely to constitute extraordinarily good cause." *See* Doc. 48, pp. 1–2. No further requests for extensions of the stay were filed, and on June 25, 2019, this Court lifted the stay, *see* Doc. 49, and entered an Amended Case Management Order that included a new deadline of July 15, 2019 for Ms. Payne to respond to the District's Motion for Judgment on the Pleadings, *see* Doc. 50, p. 2, § 3. Notwithstanding this extension of her response deadline, Ms. Payne never filed any response to the District's Motion, nor has she requested any further extensions of her deadline to do so.

So the Court now has before it a Motion that was filed nearly nine months ago, to which no response has ever been filed. If the instant Motion did not seek dispositive relief, then the lack of any response from Ms. Payne would be sufficient grounds to grant it. *See* Local Rule 7.2(f). However, since the District's Motion seeks dismissal of Ms.

Payne's lawsuit, *see* Doc. 36, p. 4, the Court will conduct a substantive analysis of the District's arguments, under the legal standard proper to a motion of this type.

## II. LEGAL STANDARD

Motions for judgment on the pleadings under Rule 12(c) are governed by the same legal standard that applies to motions to dismiss under Rule 12(b)(6). *See Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). To survive a motion to dismiss, a complaint must provide "a short and plain statement of the claim that [the plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of this requirement is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Court must accept all of a complaint's factual allegations as true, and construe them in the light most favorable to the plaintiff, drawing all reasonable inferences in the plaintiff's favor. *See Ashley Cnty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009).

However, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* In other words, while "the pleading standard that Rule 8 announces

does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id.*

## III. DISCUSSION

This Motion is about a statute under which Ms. Payne did *not* bring any claims: the Individuals with Disabilities Education Act ("IDEA"). The IDEA is a federal statute that is designed, among other things, "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." *See* 20 U.S.C. § 1400(d)(1)(A). To fulfill this purpose, the IDEA requires state and local agencies who receive federal assistance to "establish and maintain procedures . . . to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a free appropriate public education by such agencies." *See id.* at § 1415(a). Such procedural safeguards include "an opportunity for an impartial due process hearing" before the educational agency in question, *see id.* at § 1415(f)(1)(A), an opportunity for an aggrieved party from a due process hearing before a local education agency to appeal "such findings and decision to the State educational agency," *see id.* at § 1415(g)(1), and ultimately, a right for an aggrieved party to dispute the outcome of such proceedings through a civil lawsuit in state or federal court, *see id.* at § 1415(i)(2)(A).

But importantly, the IDEA states that litigants may not file civil lawsuits bringing claims under the Constitution, the ADA, or Title V of the Rehabilitation Act unless they first exhaust the IDEA's aforementioned procedures "to the same extent as would be required had the action been brought under" the IDEA. *See id.* at § 1415(l). This

requirement of administrative exhaustion under the IDEA applies even to lawsuits where no claim is formally brought under the IDEA, if the gravamen of the plaintiff's lawsuit is the denial of a free appropriate public education ("FAPE"). *See Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 754 (2017). This exhaustion requirement does not turn on whether a plaintiff seeks monetary damages or injunctive relief. *See J.M. v. Francis Howell Sch. Dist.*, 850 F.3d 944, 950 (8th Cir. 2017). Nor can it be avoided or mooted by a refusal on the part of the plaintiff to initiate administrative IDEA proceedings in the first place: "All parents, not just those who have previously sought or accepted IDEA services, must exhaust the IDEA's administrative procedures if the relief they seek is also available under the IDEA." *E.D. by and through Dougherty v. Palmyra R-I Sch. Dist.*, 911 F.3d 938, 941 (8th Cir. 2019). Simply put, a plaintiff must avail herself of the IDEA's procedures, and exhaust those procedures, before filing a civil lawsuit that seeks relief of any kind for the denial of a FAPE under the Constitution, the ADA, or Title V of the Rehabilitation Act.

However, not all discrimination on the basis of disability amounts to the denial of a FAPE; and IDEA exhaustion is not required for claims that "seek relief for simple discrimination." *See Fry*, 137 S. Ct. at 756. The United States Supreme Court has provided a two-question rubric to aid courts in determining whether the IDEA's exhaustion requirement applies to a particular set of claims:

> One clue to whether the gravamen of a complaint against a school concerns the denial of a FAPE, or instead addresses disability-based discrimination, can come from asking a pair of hypothetical questions. First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* at school—say, a public theater or library? And second, could an *adult* at the school—say, an employee or visitor—have pressed essentially the same grievance? When the answer to those questions is yes, a complaint that does not expressly allege the denial of a FAPE is also unlikely to be truly about that subject; after all, in those other situations there is no FAPE obligation and yet the same basic

> suit could go forward. But when the answer is no, then the complaint probably does concern a FAPE, even if it does not explicitly say so; for the FAPE requirement is all that explains why only a child in the school setting (not an adult in that setting or a child in some other) has a viable claim.

*Id.* (emphasis in original).

Here, these two questions would seem to be answered in the negative. Of course it is inconceivable that a child could sue a public theater or library for being retained in kindergarten; and it is just as inconceivable that an adult visitor or employee to a school could sue for the same. In theory, a closer call might be presented by the allegations that Z.P. was segregated from his classmates and disciplined for age-appropriate behavior. One can imagine non-FAPE scenarios in which adults at schools or children in other public places might suffer similar mistreatment on account of their disabilities. But the Amended Complaint leaves no room for doubt that in *this* case such claims are explicitly premised on the District's alleged denial of a FAPE to Z.P.:

> The requirements regarding the provisions of a Free and Appropriate Public Education as specifically described in Section 504 regulations are incorporated in the general non-discrimination provisions of the applicable A.D.A. regulation. . . . The retention of Z.P. as indicated in Exhibit B is a *prima facie* denial of a Free and Appropriate Public Education. . . . As set forth above, Defendant's policies and practices . . . discriminate against Plaintiff . . . by denying him equally effective educational opportunities in the most integrated appropriate setting, and instead providing him with a separate, different, and inferior educational experience. . . . Thus, defendants have . . . deprived Z.P. of a free and appropriate education . . . .

(Doc. 22, ¶¶ 57, 59, 61, 62).

This is fatal to Ms. Payne's claims in this lawsuit, because the Amended Complaint indicates that Ms. Payne has not invoked the IDEA process to remedy the alleged denial of a FAPE. Instead, it draws a formalistic distinction between the type of relief she is seeking and the type of relief offered by the IDEA. *See* Doc. 22, ¶ 101 ("This is a claim

for injunctive, declaratory, and legal relief under the laws cited. *If necessary*, Plaintiffs *will* file for educational relief related matters (such as educational evaluations) through the IDEA's administrative due process system." (emphasis added)). But as has already been observed, "the IDEA's exhaustion requirement remains the general rule, regardless of whether the administrative process offers the particular type of relief that is being sought." *J.M.*, 850 F.3d at 950 (quoting *J.B. ex rel. Bailey v. Avilla R-XIII Sch. Dist.*, 721 F.3d 588, 595 (8th Cir. 2013)). Thus, Ms. Payne's federal claims must be dismissed.

As for her state-law claims, "Section 1415(l) does not encompass common law or state law claims in its exhaustion realm." *Moore v. Kansas City Pub. Sch.*, 828 F.3d 687, 693 (8th Cir. 2016). But since the Court has now dismissed all claims over which it has original federal-question jurisdiction, it will decline to exercise supplemental jurisdiction over her state-law claims pursuant to 28 U.S.C. § 1367(c)(3).

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant Norfork School District's Motion for Judgment on the Pleadings (Doc. 36) is **GRANTED**, and Counts I–V and VII of the Amended Complaint (Doc. 22) are **DISMISSED WITHOUT PREJUDICE**. Since Count VI was previously voluntarily dismissed with prejudice, *see* Doc. 44, there are no remaining claims. Accordingly, the Clerk of the Court is **DIRECTED TO CLOSE THIS CASE**.

**IT IS SO ORDERED** on this 29th day of August, 2019.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE